UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL SALDANA,<br><br>    Plaintiff,<br><br>v.<br><br>GONZALES,<br><br>    Defendant. | No. 2:22-cv-00801-TLN-EFB (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. ECF No. 1. This case proceeds on an Eighth Amendment claim alleged against defendant Gonzales in the second amended complaint (SAC), all other defendants and claims having been dismissed. ECF Nos. 15, 16, 17. Before the court is Gonzales's motion for summary judgment. ECF No. 29. Plaintiff has filed an opposition, and defendant has replied. ECF Nos. 34, 35. For the reasons explained below, it is recommended that Gonzales's motion for summary judgment be granted.

**I. The SAC**

The SAC alleges that on April 4, 2022, Gonzales and another (John Doe) corrections officer[1] transported plaintiff from High Desert State Prison (HDSP) to an off-site medical

---

[1] Many of plaintiff's allegations and assertions refer to the collective actions of the two officers who transported him. *E.g.*, ECF No. 15 at 3. Because plaintiff's only cognizable claim

1

provider for examination of his right hand. ECF No. 15 at 3, 8-10. Plaintiff alleges he was placed in the "wrong" restraints during the transport according to a permanent medical chrono in effect since November 23, 2019. *Id*. He also alleges his medical condition necessitated that he be transported in only waist chains and not with black box hand restraints,[2] which he claims were so tight he suffered broken skin, bleeding, swelling, and bruises of both wrists, as well as mental anguish and tingling numbness that persisted as late as July 15, 2022, when he prepared his SAC. *Id*. Plaintiff alleges that he informed Gonzales of his medical condition, that there was no need to use the black box for the transport, and that the hand cuffs were so tight they broke his skin and caused him to bleed. *Id*.

## II. The Parties' Factual Contentions and Evidence

The parties have many factual disputes, generally grouped around three sets of evidentiary issues. Preliminarily, the parties agree that plaintiff has had a history of medical issues with his wrists since about 2017 or 2018. ECF No. 29-3 at 2 ¶ 3; ECF No. 34-1 at 1 ¶ 3; ECF No. 34 at 11 ((medical record indicating that plaintiff had experienced "some numbness and tingling in his [right] arm since 2017")); ECF No. 35 at 3 ("Plaintiff's medical records are replete with references to his longstanding bilateral carpal tunnel and nerve issues with both of his wrists and hands[.]"). Indeed, the reason for the April 4, 2022 transport was to have plaintiff evaluated for treatment and possible surgery of his right hand. ECF No. 15 at 10.

### A. The Medical Chrono

The first set of factual disputes is about whether plaintiff had operative medical directives as of April 4, 2022 requiring that he be transported in only waist chains. Gonzales disputes

---

in this lawsuit is against Gonzales, and it is only Gonzales's motion for summary judgment under consideration, this order describes plaintiff's allegations as referencing only Gonzales, unless an allegation that includes the actions of the Doe officer is specifically relevant and so noted.

[2] Plaintiff does not dispute Gonzales's description of the black box restraints as "a hard plastic box placed over the handcuff locks and the chain that runs between the prisoner's handcuffs. The box does not cover the hands, but is situated between them to form a rigid link between the two handcuffs. A metal clasp is used to connect an inmate's handcuffs to the Martin Chain to secure the inmate's arms." ECF No. 29-6 at 2 ¶ 10.

2

1  plaintiff's allegation of a "permanent medical chrono" in effect as of April 4, 2022 that required
2  transport in only waist chains. *See* ECF No. 15 at 3; ECF No. 29-9 at 7. The parties agree that a
3  medical classification chrono was generated for plaintiff on November 23, 2019, which stated
4  plaintiff was to have "[w]aist chains in prison and low bunk/low tier." ECF No. 15 at 25; ECF
5  No. 29-7 at 21; ECF No. 34 at 52. Plaintiff does not dispute that the November 23, 2019 chrono
6  remained in effect as of April 4, 2022. *See* ECF No. 15 at 3. The parties disagree about whether
7  the medical classification chrono generated on November 23, 2019, and in effect as of April 4,
8  2022, applied only to plaintiff's movements within the prison, or also applied to the restraints to
9  be used for transporting plaintiff. Plaintiff maintains that the "permanent" status of his November
10 23, 2019 chrono meant he should have been transported in only waist chains. ECF No. 15 at 3;
11 ECF No. 34-1 at 4 ¶¶ 14, 15. Gonzales maintains that the waist chain is only mandated for
12 plaintiff's movements within the prison, according to the plain language of the entry on the
13 chrono ("[w]aist chains in prison"). ECF No. 29-3 at 5 ¶ 14.
14      Two weeks after the transport, on April 18, 2022, plaintiff asked his primary care
15 physician to have the "waist chain chrono updated." ECF No. 29-3 at 9 ¶ 36; ECF No. 29-7 at
16 34; ECF No. 34 at 53; ECF No. 34-1 at 7 ¶ 36. On June 20, 2022, plaintiff's physician created a
17 medical classification chrono which stated that plaintiff is to have "Special cuffing: Waist chain."
18 ECF No. 29-3 at 9 ¶ 37; ECF No. 29-7 at 33; ECF No. 34-1 at 7 ¶ 37. It is unclear whether the
19 updated medical chrono issued on June 20, 2022, materially changed the waist chain directive of
20 the November 23, 2019 chrono. Gonzales contends that although the June 20, 2022 chrono
21 deletes the phrase "in prison," it also does not explicitly state whether black box restraints are
22 prohibited for transport. ECF No. 29-9 at 7-8.
23     **B.    The Transport**
24      The second set of factual issues centers around the transport event and the interaction
25 between plaintiff and Gonzales.[3] Gonzales declares that a form document known as a transport

---

[3] Plaintiff disputes several of Gonzales's statements of facts based more on what plaintiff argues should have happened, rather than what actually did happen. These instances are noted accordingly.

assessment is prepared before an inmate is transported,[4] that he is required to review the transport assessment before transporting any inmate, and that he reviewed plaintiff's transport assessment before transporting plaintiff on April 4, 2022. ECF No. 29-6 at 2 ¶¶ 6-7. Plaintiff's transport assessment had been pre-approved by the HDSP warden on March 30, 2022. *See id*. at 6.

Plaintiff's transport assessment stated that plaintiff was a high level of escape risk and was to be transported in handcuffs, leg irons, and a Martin chain with black box. *Id*. at 2 ¶ 7; *id*. at 6. There is an option on the form for "waist chains," but this item was not checked on plaintiff's transport assessment. *Id*. at 6. Gonzales declares that the black box is the standard restraint for off-site prisoner transports, *id*. at 2 ¶ 9, and submits a statewide CDCR policy that black box restraints are to be used for prisoners with disabilities because they keep the hands in front of the body instead of behind, ECF No. 29-3 at 4 ¶ 11; ECF No. 29-4 at 11-13. Plaintiff does not dispute the pre-approved transport assessment itself, *see* ECF No. 34 at 24, but he indirectly challenges whether black box restraints are, or should be, standard procedure, by asserting that officials may not place inmates in restraints for the purpose of punishment or to inflict pain. ECF No. 34-1 at 3 ¶ 10.

The parties agree that before they left the prison office to go to the transport van, plaintiff told Gonzales he had a medical reason disallowing the use of the black box restraints. ECF No. 15 at 3; ECF No. 29-6 at 2-3 ¶ 12. This was discussed, and Gonzales "explained that we had no documentation supporting his claim and no authorization to deviate from what was required by HDSP policy and the transport assessment we had received." ECF No. 29-6 at 3 ¶ 12. Gonzales declares that a prisoner who has a medical need to be transported without the black box may request this as a reasonable accommodation, but such requests are rarely granted. *Id*. at 2 ¶ 9. Plaintiff does not dispute that he had not requested a reasonable accommodation to be transported without the black box. *See generally* ECF No. 15 at 3; ECF No. 34. Plaintiff claims, and Gonzales agrees, that Gonzales did not check the medical chrono. ECF No. 34-1 at 3 ¶ 12; *see*

---

[4] Neither Gonzales nor the dismissed Doe corrections officer prepared the transport assessment. *See* ECF No. 29-6 at 6.

*also* ECF No. 29-9 at 7 (Gonzales "was not authorized to review Plaintiff's medical records and would not have had any opportunity to see the medical chrono."). Gonzales argues this is immaterial because no reasonable officer who could have accessed the medical chrono "would understand it to require deviation from standard *offsite* transportation security protocols." ECF No. 29-9 at 7 (emphasis in original). Gonzales relied on the instructions given in the transport assessment. ECF No. 29-6 at 3 ¶ 12.

Gonzales maintains that plaintiff "elected to be transported for his medical appointment with the restraints prescribed in the transport assessment." ECF No. 29-6 at 3 ¶ 12. Prisoners have the option to decline scheduled medical appointments, ECF No. 29-3 at 5 ¶ 16, and plaintiff was aware of this because he had declined medical care on some thirty occasions between March 28, 2019 and April 4, 2022, *id*. at 5 ¶ 17; ECF No. 29-7 at 39-69, including declining appointments for travel for offsite medical care, ECF No. 29-7 at 66 (plaintiff declined offsite appointment on March 3, 2020 because he "ha[d] things to do"). Plaintiff counters that refusing the appointment with Lilyquist would have meant he did not want treatment. ECF No. 34-1 at 4 ¶¶ 16-17.

Plaintiff maintains that Gonzales could have called the captain or warden for approval to change the restraints to be used to transport plaintiff. ECF No. 34-1 at 3 ¶ 13. Plaintiff argues that he has proven Gonzales "knew that [plaintiff] couldn't be in that type of restraints/black box" because plaintiff told Gonzales he had severe nerve damage and had "a few [] medical chronos" and was to be in waist chains because of the pain and damage to his hand. ECF No. 34 at 3. Plaintiff maintains he did not pose a physical threat to Gonzales, and that Gonzales was motivated by malicious or sadistic intent. *Id*. at 2. Plaintiff claims he has shown factual evidence of a violation of the "Operation Manual," and implies this alleged violation establishes an intentional use of excessive force violating the Eighth Amendment. *Id*. at 3. Plaintiff is apparently referencing the Department Operations Manual (DOM) issued by the California Department of Corrections and Rehabilitation (CDCR). *See* https://www.cdcr.ca.gov/regulations/cdcr-regulations/dom-toc/. Plaintiff attaches excerpted pages of the DOM, on which he has check-

marked provisions he inferentially alleges are relevant to his claim against Gonzales.[5] *Id*. at 3, 25-44, 54-65.  Plaintiff does not explain how or why the check-marked items might support – or even be relevant to – his claim against Gonzales.  Plaintiff seems to imply that these statements in the DOM either show or support "factual evidence of violation" and a claim for monetary compensation for an "intentional excessive force violation."[6] *Id*. at 3.

The parties agree it was Gonzales's partner who placed the handcuffs, black box, and Martin chain on plaintiff when they boarded the transport van, and Gonzales who applied leg irons.[7]  ECF No. 29-6 at 3 ¶ 13; ECF No. 29-3 at 6 ¶¶ 18; 19; ECF No. 34-1 at 5 ¶¶ 18, 19.  They left the prison in the van at about 11:00 a.m. and arrived at the medical facility in Reno, Nevada at about 1:30 p.m.  ECF No. 29-3 at 6 ¶¶ 20-21; ECF No. 34-1 at 5 ¶¶ 20-21.  The restraints were removed from the hand that needed medical attention during the medical examination, and then replaced for the return trip.  ECF No. 29-6 at 3 ¶ 16.

    **C.**    **Injuries And Post-Transport Medical Records**

The third set of factual issues is about whether and how plaintiff was injured as a result of being transported in the black box restraint, and, if so, the extent of the injuries.  The parties do not dispute the veracity of the written evaluation prepared by the offsite medical provider (Dr.

---

[5] For example, plaintiff has placed a checkmark next to several items in a list of "Use of Force" examples, such as "[s]ignificant unreasonable use of force likely to cause injury."  ECF No. 34 at 26; *see also id*. at 55 (marking items on a list of causes for adverse action against CDCR employees, such as "Dishonesty" and "Intemperance").

[6] Similarly, plaintiff's response attaches a copy of a December 2015 Special Review of HDSP by the Office of the Inspector General, without explaining its relevance to his claim against Gonzales.  *See* ECF No. 34 at 66-124.  Plaintiff has merely highlighted a handful of sentences in this document.  *See id*. at 93 (highlighting the sentences "HDSP is not keeping a consistent CDCR Form 2140, Internal Affairs Allegation Log[]" and "Unfortunately, there actually is no process for OIA to appoint a 'locally designated investigator,' so the persons conducting allegation inquiries are appointed by the hiring authority with no 'designation' from the Office of Internal Affairs.").

[7] The video recording of plaintiff's departure from HDSP shows him escorted to the transport van by two corrections officers.  Before they get in the van, one officer places hand restraints on plaintiff, and then the other officer places the leg restraints.  It is not possible to identify which of the officers in the video is Gonzales, but the video does confirm the division of tasks.  See ECF No. 29-4 at 2 ¶ 8 (Hicks Exhibit C).

Lilyquist) who examined plaintiff's right hand and wrist approximately mid-way through the events of April 4, 2022. ECF No. 15 at 8-12. Lilyquist documented that plaintiff did not have any swelling or redness as of 1:43 p.m. *Id*. at 8. Lilyquist noted plaintiff's report of worsening numbness and pain since an injury about three years previous. *Id*. Lilyquist's written assessment was that plaintiff had carpal tunnel syndrome of his right wrist, that recent imaging of the condition showed improvement compared to 2018, that surgical intervention was not immediately warranted, and that plaintiff should continue with icing, elevation, and therapeutic exercises. *Id*. at 9-10.

Plaintiff had at least two medical examinations shortly after his return to HDSP. Plaintiff was examined by Nurse Avila at about 4:45 p.m. on April 4, 2022. ECF No. 29-6 at 3 ¶ 17; ECF No. 29-5 at 2 ¶ 5. Avila reported that plaintiff had no actual or suspected pain and no urgent/emergent health care needs. ECF No. 29-5 at 2 ¶¶ 7-8; ECF No. 29-7 at 25, 26 (Avila's report). Avila declares she would have documented any cuts, lacerations, bruising, or other injuries on plaintiff's wrists, as well as any complaints of pain, discomfort, numbness, or any other injurious conditions resulting from the transport. ECF No. 29-5 at 2 ¶¶ 7, 8. Plaintiff disputes Avila's declaration and her report of the examination with a bare assertion that Avila "lied about this." ECF No. 34-1 at 6 ¶ 30. Plaintiff asks "how can [s]he say that I had no injury when I had the cuff abra[sion] on my wrist for like 10 days after that." *Id*. Plaintiff maintains he went down to the clinic to get ice and cleaning for cuts, but does not state when this occurred. *Id*. at 7 ¶ 32.

Plaintiff was next examined by Nurse Kersh at HDSP on April 5, 2022 because he complained of pain and swelling in his hand and wrist and numbness in his thumb. ECF No. 29-8 at 2 ¶ 6; ECF No. 29-3 at 9 ¶ 33. Kersh declares plaintiff did not have cuts, lacerations, or other visible injuries on his wrists when she examined him. ECF No. 29-8 at 2 ¶ 6. Kersh provided ibuprofen and instructions to keep the hands elevated when possible and avoid aggravating activities. *Id*. at 2 ¶ 7. Plaintiff does not directly dispute Kersh's medical evaluation. ECF No. 34-1 at 7. Plaintiff instead attaches copies from an administrative grievance in which plaintiff claimed that Kersh did not want to document his injuries. ECF No. 34 at 18; *see also* ECF No. 15

7

at 15 (additional grievance documentation).  Grievance exhaustion is not an issue in this case.  However, insofar as plaintiff has submitted records of his grievances as exhibits to his response to Gonzales's motion for summary judgment, plaintiff is understood to deem these records relevant to the substantive content of Gonzales's motion.[8]

Plaintiff further challenges Kersh's declaration and medical assessment by referring the court to his medical records filed in another pending lawsuit.  Plaintiff cites to "a copy of my medical 602 cuts abrasion" which he claims to have "already provide[d] [] to Federal Judge Kimberly J. Mu[e]ller and she filed this civil suit for me[9] so this court should have a copy of my medical 602 cuts abrasion."  ECF No. 34-1 at 7 ¶ 35.  The court cannot import nor infer plaintiff's evidentiary record based on pleadings filed in another lawsuit.  *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) ("[a] district court does not have a duty to search for evidence that would create a factual dispute" on summary judgment, not even within the record of the case before the court, and not even for pro se litigants (citation omitted)); *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1128 (D. Ore. 2015) (a pro se plaintiff's initial pleadings are held to less stringent standards, but at summary judgment the plaintiff's burden of proof and the elements he must prove are not relaxed).  For purposes of resolving Gonzales's motion, the court has identified plaintiff's other lawsuits to the extent of determining that:  (1) plaintiff had a civil lawsuit before Judge Mueller, Eastern District Case No. 2:19-cv-916-KJM-CKD, which he filed on May 21, 2019 and which was dismissed as of July 8, 2020 upon screening; and (2) plaintiff has a pending civil lawsuit before Judge Calabretta, Eastern District Case No. 2:18-cv-319-DJC-AC, alleging claims based on the injury to plaintiff's hand in 2017.  The pleadings in the case that was before Judge Mueller cannot possibly have included any medical records relevant to the events of April 4, 2022.  Even if pleadings in the case pending before Judge Calabretta might contain medical records pertinent to the events of April 4, 2022, the court will not undertake to

---

[8] Gonzales notes a discrepancy between plaintiff's description of the condition of his wrists in his April 12, 2022 health care grievance ("both wrists were swollen") and his July 15, 2022 SAC ("wrists that were cuts, swelling, bru[i]sed").  ECF No. 29-9 at 12.

[9] This is clearly a misunderstanding.  Judge Mueller obviously has not "filed" any civil suit for plaintiff.

8

examine that record to attempt to infer plaintiff's arguments for him.

The record is somewhat inconsistent about plaintiff's next medical encounter(s). According to Gonzales, plaintiff was seen later in the day of April 5, 2022 by a different, unidentified medical provider at HDSP, who documented bruising, abrasions, and scratches on both wrists on a "Form 7219." ECF No. 29-9 at 11. Gonzales argues that bruising, abrasions, and scratches on both wrists which materialized after plaintiff was evaluated by Lilyquist, Avila, and Kersh, supports an inference that plaintiff either suffered a subsequent injury or injured himself. *Id*. at 11-12. Neither party has submitted any documentation of this second April 5, 2022 examination. The record does contain grievance records which indicate that plaintiff's next medical examination after the Kersh encounter did not occur until April 12, 2022, when LVN Oliver documented abrasions on plaintiff's wrists. ECF No. 34 at 46. Then, on April 26, 2022, RN Davy saw plaintiff for *left* hand pain. *Id*. Also, according to grievance records, plaintiff's primary care physician opined on May 10, 2022 that plaintiff's pain "was most likely due to your hand surgery[10] and not how you were handcuffed." *Id*. On September 6, 2023, plaintiff was diagnosed by Timothy Dooley, M.D. with right hand cubital syndrome, *id*. at 12, which leads plaintiff to dispute Lilyquist's earlier diagnosis of right hand carpal tunnel syndrome. ECF No. 34-1 at 1 ¶ 5.

Finally, plaintiff submits the April 11, 2022 declaration of another inmate, Daniel Cartwright. ECF No. 34 at 7. Cartwright declares that he observed swelling and cuts on plaintiff's wrists from April 4 through April 10, 2022. *Id*. Plaintiff submits his own declaration dated November 28, 2023, in which he states he has shown his "very swollen wrists" to Cartwright who is his "celly," "on the date of 4-4-2022 through till now present date." *Id*. at 8. Plaintiff's declaration also states he "keep[s] telling my celly I feel pain and numbness up to his [sic] left thumb." *Id*.

////

---

[10] Plaintiff did not have hand surgery on April 4, 2022. He was evaluated for possible hand surgery. ECF No. 15 at 10.

### III. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On February 17, 2023, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

////

### IV. Excessive Force Standard

To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must demonstrate that prison officials applied force maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court evaluates (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id*. at 7.

"The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotation marks and citations omitted). Also, a plaintiff who suffers only de minimis injuries from a use of force fails to satisfy the physical injury requirement to recover damages for mental or emotional injuries under 42 U.S.C. § 1997e(e) and may only seek compensatory, nominal, and punitive damages that are not based upon any alleged mental or emotional injury.[11] *Oliver v. Keller*, 289 F.3d 623, 629-30 (9th Cir. 2002).

### V. Analysis

Plaintiff's Eighth Amendment excessive force claim against Gonzales fails for multiple reasons. The act of excessive force alleged by plaintiff is the application of the black box restraints to plaintiff's hands. Gonzales is not the person who applied the restraints to plaintiff's hands and had no role in that appliction. The Doe officer applied the hand restraints while Gonzales applied leg restraints, and therefore Gonzales cannot be found to have applied excessive force in the form of the black box restraints. Also, the black box restraints used for plaintiff's transport cannot be found unnecessary or per se excessive force, since this is the prescribed form of restraint for prisoner transport, including for transport of physically disabled prisoners.

---

[11] Plaintiff seeks compensatory damages for injuries to his body and mental state and mental health, and punitive damages. ECF No. 15 at 6.

Nor is there any triable question whether Gonzales misperceived the degree of risk in using black box restraints, because this form of restraint was pre-approved in plaintiff's transport assessment. Gonzales did not check plaintiff's medical chrono, but plaintiff has shown no genuine factual issue as to the medical chrono in effect as of April 4, 2022, which prescribed waist chains "in prison" and did not clearly caution against applying black box hand restraints for plaintiff's transport. Plaintiff himself could have attempted to temper the situation by requesting an accommodation and/or declining the transport, but instead he elected to proceed.

The record regarding the nature and extent of injuries plaintiff may have suffered because of the black box restraints, evaluated in the light most favorable to plaintiff, cannot support any finding that plaintiff suffered anything more than de minimis injuries from the black box restraints. None of the medical examinations conducted by Lilyquist, Avila, and Kersh on April 4 and 5, 2022 document any visible injuries to plaintiff's wrists. Plaintiff's bare assertions that Avila lied and Kersh refused to document his injuries are entirely insufficient to create a genuine issue as to whether plaintiff suffered any visible injury. To the extent the record suggests plaintiff had cuts and abrasions at a later medical encounter on April 5, 2022, or as of April 12, 2022, this evidence is not sufficient to create a genuine factual issue of whether those cuts and abrasions could have been caused by the black box restraints because the intervening medical encounters on April 4 and 5, 2022 did not document those conditions. Even if caused by the black box restraints, the injuries plaintiff alleges are de minimis. *See Segura v. Cherno*, 6:21-cv-740-YY, 2022 WL 3587860, at *8 (D. Ore. May 25, 2022) (cut and swollen hands and wrists, and wrist pain, experienced after deputy jerked hands through food slot, are de minimis (collecting cases)); *Bamdad v. Benov*, No. CV 13-296-PSG, 2022 WL 1508977, at *5 (C. D. Cal. Feb. 14, 2022) (a cut on the wrist that healed in ten days was de minimis (collecting cases)); *Brennan v. Aston*, No. 17-1928-JCC-MLP, 2020 WL 4808657, at *26 (W. D. Wash. June 8, 2020) (bruising on an arm is de minimis (collecting cases)).

Similarly, plaintiff cannot carry his burden to prove he suffered any pain caused specifically by the black box restraints, in light of the multiple medical exams on April 4 and 5, 2022, and plaintiff's condition of carpal tunnel syndrome and other issues with his hands.

13

Plaintiff's own physician opined on May 10, 2022 that plaintiff's pain was not caused by the hand restraints. Plaintiff has not shown an issue for trial whether any pain in his hands is qualitatively or quantitatively attributable to the black box restraints versus his pre-existing and ongoing issues with his hands and his carpal tunnel syndrome.

Although plaintiff's SAC survived screening on the basis of an Eighth Amendment excessive force claim against Gonzales, plaintiff's response to Gonzales's motion for summary judgment suggests plaintiff may perhaps view his claim as being more in the nature of an Eighth Amendment failure to protect claim. Plaintiff argues Gonzales either should have been aware that only waist chains should have been used and/or that Gonzales should have intervened to protect plaintiff by contacting the warden for permission to forego the black box restraints.

To the extent plaintiff's claim against Gonzales may now be construed as an Eighth Amendment failure to protect claim, the claim does not survive summary judgment for similar reasons. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). A violation of the Eighth Amendment requires a showing of both an "objective component" – the objective seriousness of the challenged condition, and a "subjective component" – the responsible official's subjective state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832. Where a prisoner alleges injuries stemming from an objectively unsafe condition of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) (citing *Farmer*, 511 U.S. at 835). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 832. Because the sufficiency of a conditions-of-confinement claim depends upon the particular facts of each situation, the "circumstances, nature, and duration" of the challenged conditions must be carefully

considered. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Thus, a showing of deliberate indifference rests on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate if.'" *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 847). The Eighth Amendment does not give rise to a federal cause of action whenever prisoners are inconvenienced or suffer de minimis injuries. *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988), *vacated on other grounds sub nom. Denton v. Hernandez*, 112 S. Ct. 1728 (1992).

Plaintiff has shown no genuine issue whether use of black box restraints is an objectively unsafe condition of confinement. Rather, black box restraints are a standard method of restraint approved for use on disabled prisoners. Plaintiff has not shown a genuine issue as to whether Gonzales was subjectively, deliberately indifferent to a substantial risk of serious harm to plaintiff. Gonzales's refusal to ask the warden for permission to deviate from the transport assessment does not demonstrate deliberate indifference, because he knew the black box to be the standard method of restraint, pre-approved for plaintiff's transport, and he discussed the transport assessment with plaintiff after which "[p]laintiff nonetheless elected to be transported for his medical appointment with the restraints prescribed in the transport assessment." ECF No. 29-6 at 3 ¶ 12. Finally, plaintiff has not demonstrated a genuine issue of fact for trial as to whether he suffered anything more than de minimis injuries from use of the black box restraints, for reasons that apply equally to a failure-to-protect claim as to an excessive force claim.

////

////

////

There is no genuine issue of fact for trial on any Eighth Amendment claim. *See Matsushita*, 475 U.S. at 587. Gonzales is entitled to summary judgment.[12]

### VI. Screened-Out Claim Against The Doe Corrections Officer

In its order screening the SAC, the court dismissed plaintiff's claim against the Doe corrections officer because unknown persons cannot be served with process until identified by their real names and the court will not investigate the names and identities of unnamed defendants. ECF No. 16 at 2. The court gave plaintiff the option of proceeding on his cognizable claim against only Gonzales. *Id*. at 4. The court noted that if plaintiff learned the identity of the Doe corrections officer, he could file a Rule 15 motion for leave to file an amended complaint to add that person as a defendant. *Id*. at 2.

Plaintiff elected to proceed on only the cognizable claim against Gonzales. ECF No. 17. Plaintiff now appears to have named the Doe corrections officer in his response to Gonzales's motion for summary judgment. *See* ECF No. 34 at 3 ("I have proven that Mr. Gonzalez [sic] and Mr. Ireland is Doe knew that [I] couldn't be in that type of restraints [].");  ECF No. 34-1 at 5 ¶ 18 ("C.O. Doe Mr. Ireland"). Plaintiff has not filed any Rule 15 motion to amend his SAC to add "Mr. Ireland" as a defendant. The only claim proceeding from plaintiff's SAC is the claim against Gonzales. Plaintiff's apparent identification of Ireland as the Doe defendant, in his response to Gonzales's motion for summary judgment, does not have the effect of reviving nor adding any claim against Doe / Ireland. However, in light of the analysis of Gonzales's motion for summary judgment set forth herein, further amendment of the SAC to add an Eighth Amendment claim against Doe / Ireland would be futile. *See Ctr. For Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear … that the complaint could not be saved by any amendment.'" (quoting *Armstrong v. Reynolds*, 22 F. 4th 1058, 1071 (9th Cir. 2022))).

---

[12] Gonzales also argues that he is entitled to qualified immunity. Because the court finds that Gonzales is entitled to summary judgment, it is not necessary to address this additional argument. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## VII. Recommendation

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Gonzales's motion for summary judgment (ECF No. 29) be granted, judgment entered for Gonzales, and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 12, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE